UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

In Re: )
)
NATHAN D. ARMSTRONG and ) No. 06-02476-PCW13
GEORGENA A. ARMSTRONG, )
) MEMORANDUM DECISION RE:
Debtors. ) CHAPTER 13 CONFIRMATION OF
) PLAN
_____)

**FACTS**

Nathan and Georgena Armstrong filed a voluntary petition for relief under Chapter 13 on October 3, 2006. Chapter 13 debtors are required to devote all projected disposable income to repayment of unsecured creditors. The amount of disposable income required to be paid is calculated pursuant to 11 U.S.C. § 1325(b)(1)(B). The implementing form is the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C). The Form B22C filed in this case on October 3, 2006 and amended December 13, 2006 indicates that debtors have an annualized current monthly income of $63,012.00, which is more than the median family income in this geographic area, based on the debtors' family size. The dispute in this case concerns the expense side of the calculation.

Schedule B-Personal Property indicates the debtors own a 1998 GMC Sierra 3500 Truck. According to Schedules D and G, there is no loan or lease obligation relating to the vehicle. The GMC truck is owned "free and clear" of liens. Debtors completed the Form B22C,

MEMORANDUM DECISION RE: . . . - 1

including, on line 28, an expense deduction of $471.00 for Transportation Ownership/Lease Expense Allowance, even though they are not actually making a loan or lease payment. The Trustee contends that the debtors are not entitled to the ownership/lease expense because they do not have a loan or lease payment on the vehicle.

## THE MEANS TEST

As the debtors are above-median income debtors, their expenses are determined pursuant to 11 U.S.C. § 1325(b)(3), which in turn instructs above-median income debtors to apply 11 U.S.C. § 707(b). That section is popularly known as the "means test." Section 707(b)(2)(A)(ii)(I) states in part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. . . .

The National Standards and Local Standards referenced are the collection guidelines used by the Internal Revenue Service (IRS) to determine a taxpayer's ability to pay past due federal taxes. The National Standards establish presumptively reasonable, necessary amounts for various necessities based upon a debtor's gross income and family size, but with limited exceptions, not based on geographic area. The Local Standards establish presumptively reasonable amounts for the necessary expenses of housing and

MEMORANDUM DECISION RE: . . . - 2

transportation based on the geographic area in which debtors reside as well as family size and number of vehicles. The Local Standard at issue is the transportation expense item referenced on line 28 of Form B22C.

To assist IRS agents in interpreting and applying the Local Standards, the IRS publishes for its agents an Internal Revenue Manual ("IRM") and Financial Analysis Handbook. The collection agents are instructed in those publications to use the expenses identified in the Local Standards as a "cap" or maximum. The taxpayer is to be allowed either the actual expense or the Local Standard, whichever is less. Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 256 (2005); *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006). Agents are instructed in the IRM that if a taxpayer has no lien or lease payment on a vehicle that only a portion of the Local Standard is to be allowed as an expense. In this case, that portion would be $200.00, and the Trustee argues that this is the appropriate amount to be referenced on line 28 rather than the $471.00, which is the unadjusted Local Standard.

**ISSUE**

The issue in this case requires the Court to determine the manner in which the Local Standard should be applied under the "means test." Specifically, may the debtors claim the full amount of the Local Standard of the Transportation/Ownership Lease Expense when the vehicle is owned "free and clear" of liens.

**ANALYSIS**

It is an understatement to say that courts are split on this issue. As of the date of this opinion, there are approximately a

MEMORANDUM DECISION RE: . . . - 3

dozen reported decisions of various bankruptcy courts determining that if no payment or lease obligation relates to a vehicle, the debtors are not entitled to the full expense deduction under the Local Standard. These cases would "adjust" the Local Standard to $200.00 as argued by the Trustee. There are more than a dozen reported bankruptcy court decisions determining that, regardless of whether a payment or lease obligation exists, debtors are entitled to the full expense deduction under the Local Standard. These cases would utilize the "unadjusted" Local Standard of $471.00 as argued by the debtors. The recent opinion, *In re Lynch*, 2007 WL 1387987 (Bankr. E.D. Va. 2007), lists the reported decisions and their holdings. To date, the only appellate level decision is *In re Ross-Tousey*, ___ B.R. ___, 2007 WL 1466647 (E.D. Wis. 2007), which adjusted the Local Standard.

## **PLAIN MEANING**

The most interesting aspect of these conflicting decisions is that each line of authority relies upon the "plain meaning" of the statute. The line of authority which adjusts the Local Standard when a vehicle is "free and clear" concludes that the plain meaning of the statute requires an adjustment. The line of authority which does not adjust the Local Standard concludes that the plain meaning of the statute so requires.

Both lines of authority reach conflicting results after application of well-recognized rules of statutory construction. The meaning of a subsection of a statute must be determined in the context of the entire statute and the statutory scheme as a whole. *In re Rufener Const., Inc.*, 53 F.3d 1064 (9th Cir. 1995). Application of this principle of statutory construction to this

MEMORANDUM DECISION RE: . . . - 4

controversy requires that the calculation of a reasonably necessary expense under (A)(ii) must be read in connection with the calculations of expenses under other subparts of the statute.

The debtors' expenses "shall be the debtor's applicable monthly expense amounts" specified by the National and Local Standards and "the debtor's actual monthly expenses" for certain items included in "Other Necessary Expenses." When Congress utilizes one word in a portion of a statute, but uses a different word in another portion of a statute, it is presumed that the two different words have two different meanings. *In re Enright*, 2007 WL 748432 (Bankr. M.D.N.C. 2007); In *re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006); and *In re Fowler*, *supra.* Use of two different words is an indication that two different meanings were intended. Unfortunately, recognition and application of these principles of statutory construction have lead to differing interpretations of the subpart § 707(b)(2)(A))(ii)(I).

The line of authority which adjusts the Local Standard concludes that the term "applicable" requires an examination of the IRM and the IRS Financial Analysis Handbook. As those IRS materials provide direction to IRS agents in applying the Local Standards, those materials determine the "applicable" Local Standard. The line of authority which does not adjust the Local Standard interprets the term "applicable" as a reference to the fact that when applying the Local Standard to a particular debtor, one must consider the geographic area and number of vehicles owned. Those factors, and those factors alone, determine the "applicable" Local Standard.

One is forced to conclude that the language of (ii), even when

MEMORANDUM DECISION RE: . . . - 5

read in connection with other subparts of § 707, is subject to different interpretations and that there is no plain meaning. If the words of the statute as written had plain, ordinary and literal meanings, there would not exist two evenly balanced lines of authority reaching contrary results. This Court concludes, as did in *In re Sawdy*, ___ B.R. ___, 2007 WL 582535 (Bankr. E.D. Wis. 2007), that § 707(b)(2)(A)(ii)(I) is ambiguous.

## **LEGISLATIVE HISTORY**

When statutory language is ambiguous, courts look to the legislative history to ascertain Congressional intent. *In re First T.D. & Inv., Inc.*, 253 F.3d 520 (9th Cir. 2001). Many of the cases concluding that the unadjusted Local Standard is appropriate and many of the cases concluding that the adjusted Local Standard is appropriate, considered the legislative history of the "means test."

Those cases which conclude that the Local Standard should be adjusted, cite the well-known legislative policy statement that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") in general, and the "means test" in particular, were enacted ". . . to insure that those who can afford to repay some portion of their unsecured debts is required to do so." *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Ceasar*, ___ B.R. ___, 2007 WL 777821 (Bankr. W.D. La. 2007); and *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006), quoting 151 Cong. Rec. S2470 (March 10, 2005). The cases which conclude that use of the unadjusted Local Standard is appropriate, recognize that Congressional purpose and policy but also recognize that it provides little guidance in determining which debtors are those who

MEMORANDUM DECISION RE: . . . - 6

can afford to pay.

The purpose of the "means test" is to identify those debtors who can afford to pay. Repeating the sweeping statement that those who can afford to pay should do so, is insufficient to determine Congressional intent regarding application of the "means test." *In re Fowler*, *supra*, and *In re Wilson*, 356 B.R. 114 (Bankr. D. Del. 2006) delve behind the general purpose in enacting BAPCPA and examine additional legislative history. They cite to the Congressional intent to require an easily applied, uniform formula. Those cases reference the intent of reducing uncertainty in calculating disposable income and reducing litigation on the issue of how much a debtor can pay. *In re Enright*, *supra*, quotes a prior proposed version of (ii), which required courts to look to the underlying instructions and interpretations of the IRM in application of the Local Standards. That version of (ii) was not enacted, thus evidencing Congressional intent that courts not do so. *In re Crews*, 2007 WL 626041 (Bankr. N.D. Ohio 2007) and *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006) relied upon the Advisory Committee Note to Form B22C, which states that although the IRM treats Local Standards as "caps" or maximum allowed expenses, the form was intentionally developed to require the unadjusted application of the Local Standard.

Some provisions of § 707(b) are in conflict with the broad goal of requiring debtors to pay more to creditors. For example, § 707(b)(2)(ii)(IV) allows actual expenses for private school tuition to a maximum of $1,500.00. Prior to BAPCPA, many courts had concluded that private school tuition was not a necessary expense and did not allow such expenses. *In re Watson*, 309 B.R.

MEMORANDUM DECISION RE: . . . - 7

652 (1st Cir. B.A.P. 2004), *aff'd*, 403 F.3d 1 (1st Cir. 2005). The calculation of current monthly income under BAPCPA specifically excludes consideration of social security benefits or disability income, § 707(b)(2)(A)(ii)(I), both of which, prior to BAPCPA, would have been available for repayment of creditors. *In re Hagel*, 184 B.R. 793 (9th Cir. B.A.P. 1995). Restating the broad goal of Congress that debtors who can afford to repay creditors should do so, begs the question of how to determine who those debtors may be.

The purpose of § 707(b) is to provide a mechanism to identify debtors who can afford to repay. If Congress had intended that such debtors be identified based on actual reasonable expenses, it would have so provided and, as to certain types of expenses, did so provide. The transportation expense is not one of them. With regard to housing and transportation expense, Congress intended that such debtors be identified by use of a uniform, easily applied formula, i.e., the Local Standards. It certainly could have, but did not state that application of the Local Standards should be applied in the same manner as described by the IRS's internal policies. The intent was to require rote mathematical calculations based upon the geographic area in which the debtor resides and the number of vehicles.

### **POLICY CONSIDERATIONS**

There are public policy arguments which support both interpretations of this ambiguous statutory provision.

If the Local Standard is adjusted to reflect existing actual debt payments or leases, there is an unfair and disparate impact on the most impoverished debtors. Those who drive newer, more recently acquired vehicles, receive a larger expense deduction in

MEMORANDUM DECISION RE: . . . - 8

calculating the amount available to pay unsecured creditors than those who have been financially conservative and continue to drive older unencumbered vehicles. Arguably, the adjustment of the Local Standard penalizes those debtors who have, pre-bankruptcy, deprived themselves of a more expensive but encumbered vehicle so that they could pay more to creditors but rewards those debtors who have chosen their own self-interest over the obligation to pay creditors.

Typically, those debtors who have no liens or leases drive older, less reliable vehicles with higher maintenance requirements which, most likely, require replacement during the term of a Chapter 13 plan. Thus, a question is raised whether those debtors will be able to continue to make the payments required by the Chapter 13 plan.

When Local Standards are adjusted, inconsistent and disparate impact results as there is no distinction between debtors with only a few remaining payments on a vehicle and those with many years of remaining payments. Both debtors would have the same expense deduction.

However, use of the unadjusted Local Standard is against policy as it is inconsistent with the goal of requiring debtors who, because they drive an unencumbered vehicle, can afford to pay more to unsecured creditors to do so. If a debtor should need to replace an older "free and clear" vehicle during the term of the Chapter 13 plan, BAPCPA allows a post-plan confirmation modification of the plan. Adjusting the Local Standard does not necessarily prejudice debtors who drive older, less reliable vehicles as such debtors are still entitled to a transportation

MEMORANDUM DECISION RE: . . . - 9

expense of $200.00.

The underlying premise of some of the cases which allow adjustment of the Local Standard is that adjusting the Local Standard to reflect the absence of an actual existing debt or lease payment is required because that is the reality of that particular debtor. The likelihood of completing a plan is increased when payment to unsecured creditors is based upon financial reality rather than artificially imposed numbers.

> Finally, it is a mistake to view the means test as a formula for measuring the culpability of a particular debtor for the circumstances that led him into bankruptcy, and, hence, whether the debtor is worthy of one form of relief rather than another. The means test does not distinguish those who have tried hard from those who have hardly tried. It is a blind legislative formula that attempts to direct debtors to a chapter that provides for at least some measure of repayment to unsecured creditors over a period of years. Like any other effort at social or economic legislation, it is not perfect. . . .

*In re Barraza, supra*, at page 729.

Much can be said from a policy perspective in support of both adjusting and not adjusting the Local Standard. Policy considerations do not appear to be helpful in determining the issue. Presumptively, Congress had all these policy considerations in mind when enacting the statute. It is not for this Court to select the policy which should be promoted by the statute, but only to interpret the statute consistent with the policy articulated by Congress. As stated in *In re Sawdy, supra*, at page 11:

> [5] So-one can envision policy interests which support both the debtor's position in the case at bar and the trustee's. Because of the existence of these competing policies, the Court does not find the policy rationale helpful.

MEMORANDUM DECISION RE: . . . - 10

The only policy which can be ascertained for the statute is that referenced in the Congressional history. The "means test" is to be used to identify those debtors who can afford to pay based upon a uniform, easily applied, formula for certain identified expenses and based upon actual expenditures for other categories of expenses or when certain circumstances articulated in the statute exist.

## USE OF IRM/FINANCIAL ANALYSIS HANDBOOK

The line of authority which adjusts the Local Standard relies upon the IRM and Financial Analysis Handbook available on the IRS website. The adjustment is determined based upon a calculation that the IRS has determined to be appropriate in applying its Local Standards. The primary rationale for concluding that such an adjustment is appropriate is the reference in (ii) to the use of the adjective "applicable" before the reference to the Local Standards. According to this line of authority, this adjective evidences Congress's intention that courts rely upon IRS applications of its Local Standards. Use of the adjective "applicable" when referring to the National Standards and Local Standards compared with use of the word "actual" when referring to other types of expenses, implies that the concept of actuality is irrelevant to the use of the Standards. As explained above, this Court agrees with the line of authority which does not adjust the Local Standards as the term "applicable" refers to the geographic location of the debtor and number of vehicles, which factors are contained within the Local Standards.

The line of authority which adjusts the Local Standards relies upon other rationale for doing so. *In re Hardacre* and *In re*

MEMORANDUM DECISION RE: . . . - 11

*Barraza*, *supra*, rely upon the rational assumption that those who are not obligated to make debt or lease payments on a vehicle have a greater ability to repay unsecured creditors. *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007) emphasizes that in adopting the "means test," Congress could have created a new system or formula but choose rather to use an existing IRS system and formula. By doing so, Congress made relevant and controlling, the IRS interpretation and application of its formula. Nor does the reliance upon the IRM result in an absurd result when applying the statutory language. *In re Carlin*, 348 B.R. 795 (Bankr. D. Or. 2006).

The IRM are not statutes. They are not promulgated as part of an administrative process. They are internal documents developed to assist IRS agents engaged in a non-bankruptcy process, i.e., the collection of past due taxes. Absent a reference in the "means test" to the IRM, which Congress chose not to do, one cannot conclude that Congress intended courts to be bound by the IRM. The legislative history of the statute merely indicated the internet location at which the Financial Analysis Handbook may be found. *In re Naslund*, 359 B.R. 781 (Bankr. D. Mont. 2006) and *In re Wilson*, *supra*. The legislative history does not refer to the content of the Financial Analysis Handbook in any way and there is no indication in the legislative history that Congress considered the content.

As noted in *In re Miller*, 361 B.R. 224 (Bankr. N.D. Ala. 2007), in adopting a formula approach to determining amounts debtors must repay, one Congressional goal was to reduce the amount of judicial discretion in such determinations. Adjustment of the

MEMORANDUM DECISION RE: . . . - 12

Local Standard to reflect the absence of an existing, actual car payment is not the only provision found in the IRM or Financial Analysis Handbook. As stated in *In re Prince*, 2006 WL 3501281 (Bankr. M.D.N.C. 2006) at page 3:

> To read section 707(b)(2)(A)(ii)(I) as permitting the courts to comb through the Internal Revenue Manual in order to pick and choose provisions to apply in a given case injects great uncertainty into the process of determining a debtor's expenses for purposes of the means test.
>
> For example, § 5.15.1.1.6, in discussing the National and Local Standards, states that '[i]n some cases, based on a taxpayer's individual facts and circumstances, it may be appropriate to deviate from the standard amount when failure to do so will cause the taxpayer economic hardship.' (Footnote omitted) Having such broad discretion to disregard the standards arguably is tantamount to having no standards at all and would seem to undermine entirely the purpose behind incorporating the National and Local Standards into the means test in the first instance.

If the term "applicable" allows reference to internal IRS manuals, rationally, other considerations could be used in determining whether the Local Standard is "applicable" such as the condition of the vehicle, any extraordinary mileage required due to debtor's employment, etc. Reference to the IRS internal manuals would not be limited to the question of an appropriate expense deduction for vehicles, but to other expenses referenced in both the National and Local Standards. This is inconsistent with the Congressional desire for an easily applied formula and a limit on judicial discretion.

Application of the IRM and Financial Analysis Handbook to interpret ambiguous provisions of the "means test" would result in IRS, not Congressional intent, controlling statutory interpretation. Such a result is not desirable.

MEMORANDUM DECISION RE: . . . - 13

**CONCLUSION**

Although the statute is ambiguous, a reasonable interpretation is that IRS National and Local Standards are to be applied as formulas to calculate the reasonably necessary expenses covered in those standards. Such an interpretation furthers the Congressional policy of the fairness of a uniform allowance and the avoidance of discretionary adjustments. The Local Standard is not to be adjusted unless required by other sections of § 707(b)(2). This Court finds that the Local Standard should be applied so that the debtors may claim the full amount of the Transportation/Ownership Lease Expense where the vehicle is owned "free and clear" of liens. Application of the applicable Local Standard in this case results in a Transportation/Ownership Lease Expense of $471.00.

Patricia C. Williams
Bankruptcy Judge

06/12/2007 10:17:57 AM

MEMORANDUM DECISION RE: . . . - 14